ORIGINAL

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

H. Michael Stanard individually and )
d/b/a One Zero Charlie Productions )
and Galt Festivals, Joeleen Stanard, )
individually and as C.E.O. of One )
Zero Charlie Productions, Inc., and )
One Zero Charlie Productions, Inc., )
an Illinois Corporation, )

                Plaintiffs, )

        v. )

Keith Nygren, individually and as )
Sheriff of McHenry County, Illinois, )
Sheriff's Deputies Ron Page, Hector )
Garza, Cathy Hart, Jennifer Asplund, )
Travis McDonald, Timothy Matteson, )
Anton Cundiff, Matt Madey, Patrick )
Dillon, Thomas Jonites, Trever Vogel, )
Jerry Croner, Debra Cypher, Jerry )
Bodden, Paul Hildreth, Dan Reineking, )
Mike Hutchenson, Ed Maldonado, Ray )
Kendall, Glen Olson, and Officers )
Miyoven and Ray Serkin individually )
and as agents and/or employees of )
Keith Nygren, individually and in his )
capacity as Sheriff of McHenry County,)
Illinois, the County of McHenry, a )
political subdivision and municipal )
corporation of the State of Illinois )
and Unknown John and Jane Does, )
)
                Defendants. )

07 CV 50132
Judge Kapala
Magistrate Judge Mahoney

Case No.

**FILED**
**JULY 13, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JURY TRIAL DEMANDED

FILED

JUL 1 3 2007

MICHAEL W. DOBBINS, CLERK
UNITED STATES DISTRICT COURT

COMPLAINT

    Now Comes the Plaintiffs, H. Michael Stanard individually
and d/b/a One Zero Charlie Productions and Galt Festivals,
Joeleen Stanard, individually and as C.E.O. of One Zero Charlie
Productions, Inc., and One Zero Charlie Productions, Inc., an
Illinois Corporation, (hereinafter referred to collectively as
"Plaintiffs"), by their attorney, Walter P. Maksym, and
complains of the Defendant, Keith Nygren, individually and in

his capacity as Sheriff of McHenry County, Illinois and his Sheriff's Deputies Ron Page, Hector Garza, Cathy Hart, Jennifer Asplund, Travis McDonald, Timothy Matteson, Anton Cundiff, Matt Madey, Patrick Dillon, Thomas Jonites, Trever Vogel, Jerry Croner, Debra Cypher, Jerry Bodden, Paul Hildreth, Dan Reineking, Mike Hutchenson, Ed Maldonado, Ray Kendall, Glen Olson, and Officers Miyoven and Serkin individually and as agents and/or employees of Keith Nygren, individually and in his capacity as Sheriff of McHenry County, and potential unknown other John and Jane Does, (hereinafter sometimes referred to as collectively and jointly as the "Defendants") and alleges as follows:

<u>Nature of the Action</u>

1.   Plaintiffs bring these actions against the Defendants to recover damages for wrongful, unwarranted and illegal intimidation, coercion, threats, extortion, infringement of and unlawful interference his free speech, movement, association, travel and liberty rights and interests, denial of due process, freedom of contract, and other injuries and deprivations of his rights which were visited upon them under color of state law and pursuant to a various individual acts and a combination and conspiracy to deprive them of their rights, privileges, immunities and property secured by the United States Constitution, for which they seek damages, injunctive, declaratory and other relief under federal and state law.

2.   This Complaint alleges claims under the Racketeer Influenced and Corrupt Organizations Act ["RICO"] - 18 U.S.C. § 1961 et. seq., the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985, the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, Federal statutes and Illinois common law, statutes and constitutional law governing, *inter alia*, free speech, association, trespass, conspiracy, unlawful

2

interference with the freedom of contract and prospective economic advantage, and related other claims and damages.

## Jurisdiction

3. This Court has original jurisdiction of Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). The Court has jurisdiction of Stanard's state law claims pursuant to 28 U.S.C. § 1367.

## Venue

4. Venue in the Western District of Illinois, Eastern Division is proper pursuant to 28 U.S.C. § 1391(a) in that Plaintiffs' claims arose within this District out of a wrongful conduct herein complained of that occurred in the County of McHenry, State of Illinois, as is hereinafter more particularly alleged Plaintiffs and all of the Defendants reside and/or do business within this District.

## Parties

5. That at all times relevant, H. Michael Stanard and Joeleen Stanard (hereinafter referred to as "Stanard") were a reputable, peaceable, law abiding, adult residents and citizens of the Village of Greenwood, County of McHenry, State of Illinois, who resided and did business on and were lawfully in possession and control of certain private property located at 5112 Greenwood Road, Greenwood, Illinois (hereinafter referred to as "the property"). At all times relevant Stanard operated a graphic design, and, occasionally, special events, shows and festivals on the property with H. Michael Stanard managing and promoting same d/b/a One Zero Charlie Productions and Galt Festivals and thereafter conducted by One Zero Charlie Productions, Inc., an Illinois Corporation (incorporated April 3, 2007) under supervision of Joeleen Stanard, its Chief Executive Officer, whereupon Galt Airport, LLC, an Illinois limited liability company, has at all time relevant also

3

operated a private airport facility (hereinafter referred to as the "Galt Airport"). Stanard and One Zero Charlie Productions, Inc. are hereinafter referred to jointly as the "Plaintiffs."

6.   That on information and belief, Keith Nygren (hereinafter referred to as "Nygren"), was at all times relevant the purportedly elected Sheriff of McHenry County, Illinois, serving pursuant to and under color of the laws of the State of Illinois and maintaining publicly funded offices at 2200 N Seminary Avenue in the Village of Woodstock, County of McHenry, State of Illinois.

7.   That on information and belief, Ron Page, Hector Garza, Cathy Hart, Jennifer Asplund, Travis McDonald, Timothy Matteson, Anton Cundiff, Matt Madey, Patrick Dillon, Thomas Jonites, Trever Vogel, Jerry Croner, Debra Cypher, Jerry Bodden, Paul Hildreth, Dan Reineking, Mike Hutchenson, Ed Maldonado, Ray Kendall, Glen Olson, and Officers Miyoven and Serkin (hereinafter referred collectively to as the "Deputies"), were at all times relevant, employees and/or agents of and/or acted in concert with and on behalf of Nygren and operated in and about McHenry County, Illinois.

8.   That Nygren and his Deputies are all sued individually and in their official capacities and they, and potential unknown others, are sometimes referred to herein collectivly as as the "Defendants."

9.   That at all times relevant, Nygren held himself out to be Nygren describes himself to be the chief law enforcement officer of McHenry County and the director of the McHenry County Sheriff's Office, the fundamental function of which is purported to be the protection of lives and property of County residents.

10.   That on information and belief Nygren manages an annual budget of approximately 23 million dollars, a staff of approximately 400 employees and a fleet of approximately 240

4

marked and unmarked vehicles, and formulates plans and policies, provides managerial coordination of departmental operations, develops and implements service programs, and supervises staff members purportedly to accomplish the goals and objectives of the Sheriff's department.

11. That Nygren describes his "Auxiliary Deputy Program", *inter alia*, as "[a] volunteer organization affiliated with the Sheriff's Office. According to Nygren, Auxiliary Deputies have limited authority and assist the Sheriff with the movement of traffic by statute. He represents to the public that his training program for new auxiliary deputies is conducted in-house, usually on Thursday nights for four hours and one full weekend day of eight hours, and that a state certified 40 hour mandatory firearms is required, which is conducted through a state mobile training team. He represents to the public that the total training for auxiliary deputies is approximately 260 hours and that auxiliary deputies ride once per month with our patrol division for on-going in-service training, that auxiliary deputies provide their own uniforms, leather gear and handguns, within departmentally established parameters, that radios, uniform patches and badges are supplied by the department, and that auxiliary deputies work various "details" throughout the year, where they provide traffic control assistance to the department or other police agencies at fairs, festivals or other large gatherings but they do not provide security or perform other police functions, are not paid, although the Auxiliary Deputy program does charge an hourly rate for each auxiliary deputy working, which is placed into the operating funds for the program, which makes the program self-sustaining, and that applications are accepted at any time and training classes are organized when staffing levels fall to the point where additional auxiliary deputies are needed.

12. That Nygren, as the chief law enforcement officer of the County of McHenry and State of Illinois, is and was responsible for his deputies conduct and omissions as well as policies, practices, customs and actions as well as those of his aforesaid deputies, agents and employees and, along with the other Defendants, but not for imposing security with respect to business activities conducted on private property such as those conducted by Stanard as are herein described.

13. That, on information and belief and at all times relevant, Deputies were and remain agents and employees of Nygren.

14. That Defendant County of McHenry (hereinafter referred to as "McHenry County") was, at all times relevant, a political subdivision of and municipal corporation duly organized under the laws of the State of Illinois.

15. That Defendants John and Jane Does and all others whose identities are not presently known, were at all relevant times relevant, also agents and employees of Nygren.

16. That on information and belief and at all times relevant, each of the above-named Defendants were acting under color of law or were acting jointly and/or in a combination and conspiracy with each other and/or unknown persons also acting under color of law.

Facts Common to All Counts

17. That, at all times relevant, Plaintiffs were located upon, lived on, and did business on the property located at 5112 Greenwood Road in the small municipality of Greenwood, located in McHenry County, Illinois located in the midst of rural farm land far from neighbors or traffic, situated approximately eight miles north of Woodstock, Illinois. As of the census of 2000, there were, approximately, only 244 people, 84 households, and 66 families residing in the village comprising a total area of

6

only 1.6 square miles. Because Greenwood is a very small Illinois municipality, it maintains no police department, a fact that the Nygren and his Deputies have used to justify the unwarranted behavior described in the following paragraphs.

18. That, at all times relevant, the property was privately owned by 5112 Greenwood Road, LLC and as a shareholder thereof Stanard had an equitable interest in therein and his residence and graphic design studio business are also located thereon. The Galt Airport, also located the property, is utilized by pilots for pleasure or business.

19. That in 2005 Stanard built a stage at the bottom of a hillside that forms a natural grass amphitheater near the airport area of the property. Stanard then began to host local concerts and events and rented the venue to others, at all times having procured all necessary governmental permits from the Village of Greenwood, maintained proper insurance coverage and employed private professional security firms for each and every event. Before being approached by Nygren, as hereinafter described, Stanard promoted and hosted similar peaceful events such as "Flyers & Tires" open house display of hot-rod and classic automobiles, antique and military aircraft, motorcycles and recreational aircraft, an event previously held for approximately six years of hosting music, air and car shows, with many thousands in attendance with no public safety issues, problems or threat to the tranquility of the community and never had an incident of any kind and without any need for nor presence of Nygren's or his Deputies involvement. Nygren could not ever point to an unsafe circumstance or potential unsafe condition on The property that would warrant or justify his demands and actions complained of herein.

7

20. That in 2005 Plaintiffs volunteered the use of the airport facility for a Katrina Relief Concert, donating the venue for a fundraiser.

21. That despite Nygren being advised that Stanard had already hired security personnel for his events, without legal authority, he foisted his deputies on Plaintiffs and the event organizers and displaced said private security by arbitrarily and capriciously specifying the number of his off-duty deputies to replace them and demanded that Plaintiffs hire them under unilaterally dictated non-negotiable terms and conditions favorable to Nygren and his deputies. In so doing Nygren illegally demanded Plaintiffs pay each of his deputies $40.00 per hour; per man, an amount more than double typical private security costs, that he and his deputies be held harmless and indemnified without limitation control, thereby being subjected to the possibility of suffering unlimited financial exposure, for their illegal conduct without authority of law (hereinafter referred to as "Nygren's coercive terms"). Because of inclement weather and inadequate promotion, the event drew only about 200 people, or less and the cost of the Nygren's deputies amounted to several thousand dollars subsuming all the event's profits. Incredibly, in light of the small crowd and the event's obvious financial failure, Nygren's deputies were extremely rude and nonetheless stood in line and demanded payment, in one case before the event was concluded. Many of them though as visibly embarrassed, took the money just the same. As a result, instead of raising money for the victims of Katrina, the organizers were forced to reach into their own pockets to cover the event's production costs."

22. That Stanard's initial encounter with Nygren occurred earlier that 2005 season when he hosted his first event featuring "The Cryan' Shames", a classic band from the 60's that

drew and "over 50" crowd, i.e., a crown consisting mostly of grand parents, hardly a high risk event. Nygren forced himself on and intimidated Stanard, catching him by surprise.

23. That thereafter, in September 2005 Stanard produced "VIVA LATINO", an event geared to our local Hispanic residents. Soon after the event's advertising started, Stanard was contacted by the Nygren who told him in no uncertain terms and without lawful authority or basis therefore, that he had to hire his off-duty deputies for security, despite of the fact he was advised that Stanard had hired a private security firm, and pay them directly thereby circumventing and avoiding payment to any public entity. In doing so Nygren told Stanard the number of officers he must hire, as well as how much they would be paid. Though he objected and protested Stanard was left no appeal or recourse in the matter.

24. That in 2006 Nygren forced Stanard to hire eight deputies over the course that two days event a burden and cost Stanard told Defendants he was not willing to bear for the fledgling "VIVA LATINO" event. But while at the Nygren's office and awaiting "paperwork", to be processed, Nygren's Deputy Glenn Olsen told Stanard that the extra security was needed because "[T]hose Mexicans are dangerous", or words to that effect. Stanard was shocked by the inappropriateness of his remarks and examples he gave him as a justification. As a result of the Nygren's concern about the "Mexican Menace", an even larger number of off-duty deputies were foisted upon Stanard. Stanard and attendees, were stunned on the day of the family-oriented event, when an even more menacing law enforcement presence was created when officers, without prior consent or permission, warrant or probable cause, arrived, not a part of any agreement and a surprise and upset when it arrive, uninvited, on and entered and trespassed on Plaintiff property with drug-sniffing

"K-9" dogs, obviously and unfortunate that Defendants were "looking for trouble" where there was none as distinct from "looking to serve". During said event several armed deputies entered uninvited into Stanard's residence and private offices demanding that he and his wife provide them bottled water and/or soft drinks and insisted they use their private bathroom, instead of the rented outside port-a-potties that were provided for use by the events attendees. Defendants displayed an intimidating presence at said events by wearing their uniforms and firearms and situating and parking numerous Sheriffs squad cars on Plaintiffs property near and about the entrance. Said display of force at Plaintiffs peaceful events changed their character in such away as to also deter attendance and intimidate attendees. Stanard and his wife were thereby intimidated, menaced and felt they had no recourse other than to comply and submit to said home invasion and trespass.

25. That when Stanard objected and questioned Nygren's authority to demand use of and payment to Nygren's "off-duty" deputies, Nygren personally threatened to close down the country road in front of Plaintiffs' property for future events if he did not capitulate and do as he ordered. Again, Plaintiff had no choice in the matter but to be submissive. Nygren once again dictated the number of "off-duty" deputies he had to hire as well as the amount I would need to pay for each. On information and belief, this practice may be employed as a ruse by Nygren dole out favorable assignments to reward loyal deputies political supporters with "under the table" income bypassing the public financial record keeping McHenry County and the McHenry County Sheriff's Office. Nygren refused to negotiate or entertain any counter-offer to his demands and ultimatums - it was do as Nygren said or he would shut Plaintiffs down by closing the county highway in front of the property. Because the

10

main access to Plaintiff's property and said are attained via an
adjacent public county road normally patrolled by the
Defendants, and for which they generally, normally and routinely
provide traffic control and management when and where and as
needed as a public service to attendees and other motorists in
the area, Plaintiffs further reasonably fear that if they
opposed or oppose Defendants illegal conduct, threats and
intimidation complained of herein by this litigation or
otherwise, Defendants will not provide such traffic control and
management as, when and where they may needed on said public
county road in connection for such future events as would
otherwise be generally, normally and routinely provided so as to
obstruct, hinder and undermine traffic near and access to and
egress from Plaintiffs' said events.

26.  That in 2005 and 2006 Nygren as a part of his ongoing
scheme and practice through repeated and ongoing treats,
displays of armed force and intimidations for his own personal
gain, profit and pecuniary interest coerced Stanard into sign
unilateral, non-negotiable "Independent Off-Duty Agreements"
(hereinafter referred to as the "Coerced Contracts" - copies
attached as Exhibits "A" and "B") in connection with concert
events held at on July 29 and 30, 2005 and July 29, 2006 and pay
Defendants double the market rate for such security services. No
independent lawful consideration was given to or received by
Plaintiffs for their execution and, further, they were against
public policy designed and procured expressly to deny them their
constitutional rights. But for the foregoing, Plaintiffs would
have never signed said coerced contracts nor paid any monies in
accordance therewith.

27.  That since the minute Village of Greenwood maintained
no police force, the Nygren, a large and imposing, routinely
armed man, approximately 6' 5" in height with a reputation as a

11

"bully" has instilled and continues to instill fear and rendered
and continues to render Plaintiffs afraid of him and misuse of
his badge of authority, deputies, public squad cars, armed and
intimidating presence and physical and colorable governmental
power and authority. Having no other recourse or other local law
enforcement agency available to protect their rights, Plaintiffs
reluctantly succumbed and submitted to Nygren's and his armed
deputies extortion and abuse of power they had sole jurisdiction
and police power over them, their family, businesses and
property in the event of a crime occurring or a situation
developing that requires law enforcement and he simply did not
know what else to do to escape Defendants' unlawful and coercive
conduct as aforesaid.

28. That at all times relevant Plaintiffs were concerned
and fearful that if they were to challenge, question, challenge,
resist or refuse comply with Nygren's coercive and intimidating
extortive tactics, demands and purported authority, or yield to
his deputies' trespasses, invasions and other illegal conduct
complained of herein, whether they failed or prevailed, they
would be subject to or at least reasonably fear the possibility
of wrongful retaliation and punishment by Nygren and/or his
deputies.

29. That on information and belief, Nygren and his
Deputies have engaged in a similar illegal pattern, practice and
course of illegal conduct with respect to other businesses in
McHenry Count, a citizens known as the Bailensons first opened
the club in McHenry County, they were similarly "required" to
pay two off-duty sheriffs deputies to provide "security" for
there Club NRG (pronounced "Energy"), a teen dance club that
operated in Building D on the fairgrounds in November of 2005.

30. That on information and belief neither Nygren nor his
deputies had any lawful authority to require citizens to only

12

use his deputies for security services at events conducted on private property at a dictated arbitrary fee payable directly to them.

31. That next planned events to be held on The property are a music concert "HARD LANDING!" featuring the classic bands, "Iron Butterfly" and "Canned Heat" plus the Hudson McCoy Band is scheduled to be held on July 21, 2007 and "FLYERS-TIRES", (hereinafter referred to as the "2007 Event") is scheduled to be held on August 11 and 12, 2007. Plaintiffs are promoting and managing said upcoming 2007 Events and has or will have timely procured all necessary governmental permits from the Village of Greenwood, proper insurance coverage and private professional security firms in connection therewith.

32. That on information and belief, said Deputies, knowingly and deliberately, with the knowledge of and in conspiracy and combination with and under the direction and supervision of Nygren, knew or should have and aware of were engaged in a common purpose as complicit and/or willing participants to force Plaintiffs to purchase said security services through threat, extortion and intimidation as aforesaid.

33. That on information and belief, Nygren was at all time relevant, the chief law enforcement officer and the chief administrative officer of McHenry County and were therefore, by operation of state law and as a matter of fact and practice, a final decision maker with regard to the acts and decisions, activities herein mentioned.

34. That, on information and belief, all of the above wrongful acts were committed pursuant to the authorization and/or under the supervision, direction and of Nygren, who had ultimate decision making authority on behalf of the McHenry County Sheriff's Office in such matters and Nygren acted on

13

behalf of his deputies named herein in connection with the over acts and for the illegal purposes herein described.

35. That Defendants acts and decisions were intentional and contrary of existing state and federal law and directly and proximately caused the Constitutional violations; injuries and damages to Stanard hereinabove alleged and are directly chargeable to Nygren and the other Defendants because of their status as his agents and employees and his status as their agent and representative.

36. That because The property is situated only a few miles from the Illinois - Wisconsin state line, the patrons and attendees from Wisconsin regularly attend and spend money at said concerts, festivals and events, part of which funds have been and may hereafter be paid under coercion and duress to Defendants, thus involving and effecting interstate commerce among the states.

### COUNT I
(Racketeer Influenced and Corrupt Organizations
Act ["RICO"] - 18 U.S.C. § 1961 et. seq., Claim)

1-36. Plaintiffs reallege paragraphs 1 through 36 of this Complaint as paragraphs 1 through 36 of this Count I as if set forth fully herein.

37. That Defendants individually, jointly, and in combination and conspiracy, with their named and unnamed co-conspirators, within the meaning of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et. seq., (hereinafter referred to as the "RICO Act") were, at all times material employed by McHenry County Office which was and is governmental entity used by them as a racketeering enterprise to accomplish the and unlawful economic coercion and extortion complained of herein and which was, at all times relevant which, run by and under Defendant Nygren's domination and control,

14

participated in and effect interstate commerce as herein
alleged.

38. That as is set forth more fully above, on information
and belief, Defendants and their co-conspirators conspired to
conduct and/or to participate directly in the conduct of the
affairs of the through a pattern of racketeering activity
against the citizens of McHenry County, including Stanard, in
order to suppress and destroy competition regarding security
services on private property. That pursuant to the RICO Act,
Defendants extortive activities constituted a Pattern of
Racketeering activity and conspiracy involving violations of
1956(a)(1)(B)(ii) and 18 U.S.C. § 1956(a)(1)(A)(i) (money
laundering) Section 1951 (extortion), and acts chargeable under
any of the following provisions of the laws of the State of
Illinois 720 ILCS 5/33-3(d) (official misconduct); 720 ILCS
5/1211 (criminal home invasion); 720 ILCS 5/19-4 (criminal
trespass to a residence 720 ILCS 5/19-4); 18 U.S.C. § 1341 (the
use of interstate mail or wire facilities, or the causing of any
of those things) (promoting unlawful activity) and knowing that
the property involved in a financial transaction represents the
proceeds of some form of unlawful activity, conducts or attempts
to conduct such a financial transaction which in fact involves
the proceeds of specified unlawful activity with the intent to
promote the carrying on of specified unlawful activity all in
violation of RICO. As described above, Defendants combined and
conspired to conduct or participate in the conduct of the
affairs of an enterprise, the McHenry County Sheriff's Office,
through a pattern of racketeering activity including in
violation of the laws of the State of Illinois.

39. The numerous illegal predicate acts which constitute
the pattern of racketeering activity, and which were agreed to,
and committed by, the Defendants and their co-conspirators, are

set forth more specifically above and were and are violations of the criminal laws of the United States and the State of Illinois, and conspiracy to commit the acts complained of herein under federal and state law.

40. The Defendants obtained, as a direct result of their racketeering activity, both directly and indirectly, income from Stanard and other businesses and citizens forced employment as private security and substantial compensation as a result of their racketeering activity which was never deposited into but were diverted from public funds.

41. The Defendants' racketeering activity proximately caused and continues to proximately cause Stanard to suffer injury to his person, business and property as more fully set forth above.

WHEREFORE, Plaintiffs pray for judgment as follows:

A. Declaring that Defendants' corrupt activity alleged herein be adjudged and decreed to be in violation of RICO Act;

B. Awarding Plaintiffs and against Defendants, jointly and severally, treble under 18 U.S.C. § 1964 general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars;

C. Awarding Plaintiffs equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining, prohibiting and restraining Defendants from hereafter ever prohibiting Defendants from engaging in the same type of endeavor, i.e., requiring or intimidating Plaintiffs to enter into or perform such type or kind of coerced contract or threatening to, retaliate, interfere, demand, intimidate them in any way or requiring any such payment, indemnification, to be held harmless or to command or require any other type or kind of benefit or right, or closing down roads or otherwise blocking or

interfering with access to their property, in connection with any and all lawful events or concerts conducted on their property or otherwise, interfering with them or others coming onto and going to, from, on or about their property, or in any other way placing any restraint on their liberty or property or engaging in for any other associated or similar peaceable assembly, speech or activity as herein described or employment of private security persons in connection therewith, that a declaratory judgment be entered against the Defendants and in their favor declaring that the coerced contracts that they signed be declared illegal, against public policy, void *ab initio* and of no force and effect, that they be ordered expunged and removed from the Sheriff's and other related government records and files, that this Court declare the rights of the that a judgment of rescission of the above-mentioned coerced contracts be entered against Defendants jointly and severally, that all payments heretofore made by the pursuant to said coerced contracts and illegal conduct be accounted for, disgorged and refunded to Plaintiffs with prejudgment interest there on pursuant to 735 ILCS 5/2-1303;

D.    Awarding Plaintiffs treble damages under the RICO Act;

E.    Awarding Plaintiffs civil penalties pursuant to under the RICO Act;

F.    Awarding Plaintiffs costs, disbursements and reasonable attorneys fees under the RICO Act; and

G.    Awarded Plaintiffs such other and further relief, as may be appropriate, necessary, just and proper in the premises.

## COUNT II
(Conspiracy to Violate Racketeer Influenced and
Corrupt Organizations Act ["RICO"] - § 1962(d)) Claim)

1-41. Plaintiffs reallege paragraphs 1 through 41 of Count I as paragraphs 1 through 41 of this Count II as if set forth fully herein.

42. That on information and belief, Defendants forgoing acts were a product of their tacit, express and/or implied agreement, combination and conspiracy as aforesaid to plan, further and/or accomplish said endeavors that, if and/or when completed would violate the RICO Act to Plaintiff detriment and damage as aforesaid.

WHEREFORE, Plaintiffs pray for judgment as follows:

A.   Declaring that Defendants' corrupt activity alleged herein be adjudged and decreed to be in violation of RICO Act;

B.   Awarding Plaintiffs and against Defendants, jointly and severally, treble under 18 U.S.C. § 1964 general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars;

C.   Awarding Plaintiffs equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining, prohibiting and restraining Defendants from hereafter ever prohibiting Defendants from engaging in the same type of endeavor, i.e., requiring or intimidating Plaintiffs to enter into or perform such type or kind of coerced contract or threatening to, retaliate, interfere, demand, intimidate them in any way or requiring any such payment, indemnification, to be held harmless or to command or require any other type or kind of benefit or right, or closing down roads or otherwise blocking or interfering with access to their property, in connection with any and all lawful events or concerts conducted on their property or otherwise, interfering with them or others coming onto and going to, from, on or  about their property, or in any other way placing any restraint on their liberty or property or engaging in for any other associated or similar peaceable assembly, speech or activity as herein described or employment of private security persons in connection therewith, that a

declaratory judgment be entered against the Defendants and in
their favor declaring that the coerced contracts that they
signed be declared illegal, against public policy, void *ab
initio* and of no force and effect, that they be ordered expunged
and removed from the Sheriff's and other related government
records and files, that this Court declare the rights of the
that a judgment of rescission of the above-mentioned coerced
contracts be entered against Defendants jointly and severally,
that all payments heretofore made by the pursuant to said
coerced contracts and illegal conduct be accounted for,
disgorged and refunded to Plaintiffs with prejudgment interest
there on pursuant to 735 ILCS 5/2-1303;

D.   Awarding Plaintiffs treble damages under the RICO Act;

E.   Awarding Plaintiffs civil penalties pursuant to under
the RICO Act;

F.   Awarding Plaintiffs costs, disbursements and
reasonable attorneys fees under the RICO Act; and

G.   Awarded Plaintiffs such other and further relief, as
may be appropriate, necessary, just and proper in the premises.

## COUNT III
(Deprivations of Civil Rights - 42 U.S.C. § 1983)

1-41. Plaintiffs reallege paragraph 1 through 41 of Count I
as paragraphs 1 through 41 of this Count I as if set forth fully
herein.

That, on information and belief, the Defendants
foregoing acts and omissions were done and committed in
violation of 42 U.S.C. § 1983 when each of the above-named
Defendants were acting under color of law or were all acting
jointly and/or in conspiracy with each other and/or other
persons acting under color of law thereby intending to deprive
and depriving Plaintiffs of their rights, privileges and
immunities, secured by the laws statutes and Constitution of the

19

United States including but not limited to their rights to freedom of association, speech, privacy, assembly, travel and contract.

43. That, on information and belief, as a direct and proximate result of one or more of Defendant's foregoing acts and omissions, Plaintiffs suffered extortion of his money, loss of liberty, loss of freedom to contract, great emotional and mental shock, upset, pain, distress, anguish, humiliation, great and loss and deprivation of his civil rights under the first, fourth, fifth, eight, and fourteenth amendments to the United States Constitution, which injuries continue to this day and will continue and compound in the future.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, that they be awarded equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from hereafter ever requiring or intimidating Plaintiffs to enter into or perform such type or kind of coerced contracts or threatening to, retaliating, interfering, demanding, intimidating them in any way or requiring any payment, indemnification, to be held harmless or to command or require any other type or kind of benefit or right, or closing down roads or otherwise blocking or interfering with access to their property, in connection with any and all lawful events or concerts conducted on their property or otherwise, interfering with Plaintiffs or others coming onto and going to, from, on or about his said property, or in any other way placing any restraint on their liberty or property or engaging in for any other associated or similar

peaceable assembly, speech or activity as herein described or employment of private security persons in connection therewith, that a declaratory judgment be entered against the Defendants and in their favor declaring that the coerced contracts that they signed be declared illegal, against public policy, void *ab initio* and of no force and effect, that they be ordered expunged and removed from the Sheriff's and other related government records and files, that this Court declare the rights of the that a judgment of rescission of the above-mentioned coerced contracts be entered against Defendants jointly and severally, that all payments heretofore made by Plaintiffs to said Defendants pursuant to said coerced contracts and illegal conduct be accounted for, disgorged and refunded to Plaintiffs with prejudgment interest thereon, that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars against each Defendant, jointly and severably, plus they be awarded such other and further relief as may be just and proper in the premises, plus the costs of this suit, attorneys fees under 42 U.S.C. § 1988 and such other and further relief as may be proper in the premises.

COUNT IV
(Conspiracy to Deprive Civil Rights - 42 U.S.C. § 1985)

1-44. Plaintiffs reallege paragraph 1 through 42 of Count II as paragraphs 1 through 41 as paragraphs 1 to 42 of this Count IV and paragraphs 42 and 43 of Count III as paragraphs 43 and 44 of this Count IV as if set forth fully herein.

45. That on information and belief and at all times relevant, Defendants individually and in combination and conspiracy with each other and/or other as of yet unknown co-conspirator John and Jane Does, by their actions as set forth above committed certain overt acts as hereinabove set forth.

21

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, that they be awarded equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from hereafter ever requiring or intimidating Plaintiffs to enter into or perform such type or kind of coerced contract or threatening to, retaliating, interfering, demanding, intimidating them in any way or requiring any payment, indemnification, to be held harmless or to command or require any other type or kind of benefit or right, or closing down roads or otherwise blocking or interfering with access to his property, in connection with any and all lawful events or concerts conducted on his property or otherwise, interfering with Plaintiffs or others coming onto and going to, from, on or about their said property, or in any other way placing any restraint on their liberty or property or engaging in for any other associated or similar peaceable assembly, speech or activity as herein described or employment of private security persons in connection therewith, that a declaratory judgment be entered against the Defendants and in his favor declaring that the coerced contracts that they signed be declared illegal, against public policy, void *ab initio* and of no force and effect, that they be ordered expunged and removed from the Sheriff's and other related government records and files, that this Court declare the rights of the that a judgment of rescission of the above-mentioned coerced contracts be entered against Defendants jointly and severally, that all payments heretofore made by Plaintiffs to said Defendants

pursuant to said coerced contracts and illegal conduct be
accounted for, disgorged and refunded to Plaintiffs with
prejudgment interest thereon, that they be awarded general,
compensatory and punitive damages in a sum in great excess of
Seventy Five Thousand ($75,000.00) dollars against each
Defendant, jointly and severably, plus they be awarded such
other and further relief as may be just and proper in the
premises, plus the costs of this suit, attorneys fees under 42
U.S.C. § 1988 and such other and further relief as may be proper
in the premises.

COUNT V

(Hobbs Act Claim - 18 U.S.C. § 1951, et. seq.)

1-45. Plaintiffs reallege paragraph 1 through 45 of Count
IV as paragraphs 1 through 45 as paragraphs 1 to 45 of this
Count V as if set forth fully herein.

46. That by reason of the forgoing Defendants as agent of
the government used and threaten to continue to use his or her
legitimate governmental powers to obtain an illegitimate
objectives in violated The Hobbs Act, 18 U.S.C. § 1951, et.
seq., in that they so acted and/or conspired under color of
official right by wrongful plan, extortion, intimidation and
threat of force and/or other unlawful consequence and through
fear and misuse of there office to obstruct, hinder, interfere
with, and/or affect commerce and the use and enjoyment of
Plaintiffs' property and obtaining, as uniformed public
officials payment to which they were not entitled by law,
thereby using the governmental powers with which they have been
entrusted to gain personal or illegitimate rewards and payments
which they knew or should have known were made and/or obtained
in return for the colorable official acts as aforesaid.

WHEREFORE, Plaintiffs demand judgment against the
Defendants, and each of them, individually, jointly and
severally, and that they be awarded general, compensatory and

punitive damages in a sum in great excess of Seventy Five
Thousand ($75,000.00) dollars, that they be awarded equitable
relief against each Defendants, jointly and severally, including
but not limited to temporary, preliminary and permanent
injunctive relief, to issue without bond, enjoining and
restraining Defendants from hereafter ever requiring or
intimidating Plaintiffs to enter into or perform such type or
kind of coerced contract or threatening to, retaliating,
interfering, demanding, intimidating them in any way or
requiring any payment, indemnification, to be held harmless or
to command or require any other type or kind of benefit or
right, or closing down roads or otherwise blocking or
interfering with access to his property, in connection with any
and all lawful events or concerts conducted on his property or
otherwise, interfering with Plaintiffs or others coming onto and
going to, from, on or about their said property, or in any other
way placing any restraint on their liberty or property or
engaging in for any other associated or similar peaceable
assembly, speech or activity as herein described or employment
of private security persons in connection therewith, that a
declaratory judgment be entered against the Defendants and in
his favor declaring that the coerced contracts that they signed
be declared illegal, against public policy, void *ab initio* and
of no force and effect, that they be ordered expunged and
removed from the Sheriff's and other related government records
and files, that this Court declare the rights of the that a
judgment of rescission of the above-mentioned coerced contracts
be entered against Defendants jointly and severally, that all
payments heretofore made by Plaintiffs to said Defendants
pursuant to said coerced contracts and illegal conduct be
accounted for, disgorged and refunded to Plaintiffs with
prejudgment interest thereon, that they be awarded general,

compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars against each Defendant, jointly and severably, plus they be awarded such other and further relief as may be just and proper in the premises, plus the costs of this suit, attorneys fees under 42 U.S.C. § 1988 and such other and further relief as may be proper in the premises.

COUNT VI

(Direct Action Under U.S. Constitution)

1-46. Plaintiffs reallege paragraph 1 through 46 of Count V this Complaint as paragraphs 1 through 46 of this Count VI as if set forth fully herein.

47. That the above actions directly infringed and continue to violate Plaintiffs' rights under the First Amendment to the United States Constitution to free speech, expression, assembly, association, travel and contract they are entitled to relief fashioned directly thereunder.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, that they be awarded equitable relief against each Defendant, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from hereafter ever requiring or intimidating Plaintiffs to enter into or perform such type or kind of coerced contract or threatening to, retaliating, interfering, demanding, intimidating them in any way or requiring any payment, indemnification, to be held harmless or to command or require any other type or kind of benefit or right, or closing down roads or otherwise blocking or

interfering with access to their property, in connection with
any and all lawful events or concerts conducted on his property
or otherwise, interfering with Plaintiffs or others coming onto
and going to, from, on or about their said property, or in any
other way placing any restraint on their liberty or property or
engaging in for any other associated or similar peaceable
assembly, speech, travel or activities as herein described or
employment of private security persons in connection therewith,
that a declaratory judgment be entered against the Defendants
and in their favor declaring that the coerced contracts that
they signed be declared illegal, against public policy, void *ab
initio* and of no force and effect, that they be ordered expunged
and removed from the Sheriff's and other related government
records and files, that this Court declare the rights of the
that a judgment of rescission of the above-mentioned coerced
contracts be entered against Defendants jointly and severally,
that all payments heretofore made by Plaintiffs to said
Defendants pursuant to said coerced contracts and illegal
conduct be accounted for, disgorged and refunded to Plaintiffs
with prejudgment interest thereon, that they be awarded general,
compensatory and punitive damages in a sum in great excess of
Seventy Five Thousand ($75,000.00) dollars against each
Defendant, jointly and severably, plus they be awarded such
other and further relief as may be just and proper in the
premises, plus the costs of this suit, attorneys fees under 42
U.S.C. § 1988 and such other and further relief as may be proper
in the premises.

COUNT VII
(Monell Claim)

1-47. Plaintiffs reallege paragraph 1 through 47 of Count
IV as paragraphs 1 through 47 of this Count VII as if set forth
fully herein.

48. That on information and belief, and at all times relevant, Nygren had and enforced a policy of official misconduct, coercion and intimidation as herein alleged.

49. That, additionally and alternatively, upon information and belief, Nygren failed to adequately train and supervise their respective above-named deputies, agents and employees with respect to proper official, investigatory and police procedures relating to, *inter alia*, searching and denying persons such as Stanard under such circumstances their First, Fourth, Fifth and Fourteenth Amendment and other Constitutional rights.

50. These policies, practices, customs and failures by Defendants directly and proximately caused the constitutional violations and injuries to Stanard, thereby making them directly chargeable to Nygren.

51. That on information and belief, and at all times relevant, Nygren had and enforced the above stated policies, that he administered, and for which he had ultimate decision making authority in such matters, were, by operation of state law and as a matter of fact, the final decision maker with regard to administrative acts and decisions that Defendants made and/or participated in as hereinabove described.

52. That said acts and decisions directly and proximately caused the constitutional violations, injuries and damages to Plaintiffs as hereinabove alleged and are directly chargeable to Nygren, because of his status as a final decision maker.

53. That, additionally and alternatively, upon information and belief and at all times relevant Nygren planned, devised and administered the corrupt and illegal practices described herein and other infringements of Plaintiffs' constitutional rights and liberties as herein alleged for the purposes herein stated.

54. These policies, practices, customs and failures directly and proximately caused the constitutional violations

and injuries to Plaintiffs, thereby making them directly chargeable to Nygren.

55. These policies, practices, customs and failures directly and proximately injured Plaintiffs as hereinabove alleged.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from hereafter ever requiring or intimidating Plaintiffs to enter into or perform such type or kind of coerced contract or threatening to, retaliating, interfering, demanding, intimidating them in any way or requiring any payment, indemnification, to be held harmless or to command or require any other type or kind of benefit or right, or closing down roads or otherwise blocking or interfering with access to their property, in connection with any and all lawful events or concerts conducted on their property or otherwise, interfering with Plaintiffs or others coming onto and going to, from, on or about his said property, or in any other way placing any restraint on his liberty or property or engaging in for any other associated or similar peaceable assembly, speech, travel, or other activities as herein described or employment of private security persons in connection therewith, that a declaratory judgment be entered against the Defendants and in their favor declaring that the coerced contracts that they signed be declared illegal, against public policy, void *ab initio* and of no force and effect, that they be ordered expunged and removed from the Sheriff's and other related government records and files, that this Court declare the rights of the that a judgment

of rescission of the above-mentioned coerced contracts be entered against Defendants jointly and severally, that all payments heretofore made by Plaintiffs to said Defendants pursuant to said coerced contracts and illegal conduct be accounted for, disgorged and refunded to Plaintiffs with prejudgment interest thereon, that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars against each Defendant, jointly and severably, plus they be awarded such other and further relief as may be just and proper in the premises, plus the costs of this suit, attorneys fees under 42 U.S.C. § 1988 and such other and further relief as may be proper in the premises.

COUNT VIII
(Federal Class Action)

1-55. Plaintiffs reallege paragraphs 1 though 55 of Count VII as paragraph 1 though 55 of this Count VIII as if set forth fully herein.

56. That on information and belief, Plaintiffs and other natural citizens, corporations and other entities doing business in McHenry County, State of Illinois have paid prices for security services that were artificially inflated by the conspiracy, combination, arrangement and illegal agreements and contracts, anticompetitive practices, including price fixing and self-allocations of market for security services, and an unreasonable restraints of trade, which may include exclusive dealing arrangements the establishment or use of coercive monopoly power to exclude and stifle competition and fix prices all in restraint of trade, to suppress and destroy competition and freedom of contract in violation of the Illinois Antitrust Act, in an amount presently undetermined but may be determined through discovery.

57. The class on whose behalf this action is brought on behalf of all natural citizens of and corporations and other entities doing business in McHenry County, State of Illinois that have been required to accept and pay for security services provided by the defendants, or their co-conspirators, during the period June 24, 2002 and thereafter.

58. That Plaintiffs, as class representatives, represent the claims of each of these natural citizens and corporations of McHenry Illinois pursuant to Fed. R. Civ. Pro. 23.

59. That a class action may be maintained in this action because:

(a) The class is so numerous that joinder of all members is impractical. While the exact number and identities of the class members are unknown at this time, Plaintiffs believes the number to be substantial and that they can be determine through discovery.

(b) There are questions of fact or law, including but not limited to the above issues of conspiracy, etc. that are common to the class. Such questions predominate over any questions affecting only individual class members.

(c) Plaintiffs are best situated to, and will, fairly and adequately represent the interest of the class and other members, who like them, have been intimidated, may, like them, be fearful to step forward to vindicate and protect their rights.

(d) The class action is an appropriate method for the fair and efficient adjudication of the controversy.

WHEREFORE, Plaintiffs, as class representatives, prays for judgment as follows:

A. Declaring that the conspiracy, combination, contracts, arrangements and agreements alleged herein be adjudged and decreed to be in violation Illinois law;

30

B.   Awarding the class representatives and the class a judgment against Defendants, jointly and severally, general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars;

C.   Awarding the class representatives and the class equitable relief against each Defendant, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from hereafter ever requiring or intimidating them to enter into or perform such type or kind of coerced contract or threatening to, retaliate, interfere, demand, intimidate them in any way or requiring any payment, indemnification, to be held harmless or to command or require any other type or kind of benefit or right, or closing down roads or otherwise blocking or interfering with access to their property, in connection with any and all lawful events or concerts conducted on their property or otherwise, interfering with them or others coming onto and going to, from, on or about their property, or in any other way placing any restraint on their liberty or property or engaging in for any other associated or similar peaceable assembly, speech or activity as herein described or employment of private security persons in connection therewith, that a declaratory judgment be entered against the Defendants and in their favor declaring that the coerced contracts that they signed be declared illegal, against public policy, void *ab initio* and of no force and effect, that they be ordered expunged and removed from the Sheriff's and other related government records and files, that this Court declare the rights of the that a judgment of rescission of the above-mentioned coerced contracts be entered against Defendants jointly and severally, that all payments heretofore made by the pursuant to said coerced contracts and illegal conduct be

31

accounted for, disgorged and refunded to Plaintiffs and the class with prejudgment interest there on pursuant to 735 ILCS 5/2-1303;

D. Awarding the class representatives and the class treble damages;

E. Awarding the class representatives and the class civil and equitable appropriate remedies including an equitable accounting;

F. Awarding the class representatives and class costs, disbursements and reasonable attorneys fees; and

G. Awarded the class representatives and class such other and further relief, as may be appropriate, necessary, just and proper in the premises.

## PENDENT STATE COUNTS

### COUNT IX
### (Conversion by Extortion
### and Economic Coercion)

1-55. Plaintiffs reallege paragraphs 1 though 55 of Count VII as paragraph 1 though 55 of this Count IX as if set forth fully herein.

56. That, on information and belief and at all times relevant, by their conduct the unlawfully Defendants through extortion, economic coercion, threats, intimidation and forcing unlawful contracts and payments pursuant thereto illegally converted Plaintiffs' funds for their and one another's use and benefit as aforesaid.

WHEREFORE, Plaintiffs demands judgment against the Crumb, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

32

## COUNT X
### (Trespasses)

1-56. Plaintiffs reallege paragraph 1 through 56 of Count IX as paragraphs 1 through 56 of this Count X as if set forth fully herein.

57. That, on information and belief and at all times relevant, by their conduct the Defendants constituted trespasses to Plaintiffs' property without having first obtained his free and voluntary permission or consent or having first secured a warrant upon probable cause.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT XI
### (Illegal Searches and Seizures)

1-57. Plaintiffs reallege paragraph 1 through 57 of Count X as paragraphs 1 through 57 of this Count XI as if set forth fully herein.

58. That, on information and belief and at all times relevant, by their conduct the Defendants procured the unwarranted and unlawful searches and seizures of Plaintiffs' property without good, legal, reasonable or probable cause.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT XII
### (Intentional Inflictions of Mental and Emotional Distress)

1-58. Plaintiffs incorporate by reference paragraphs 1 though 58 of Count XI as paragraphs 1 though 58 of this Count XII as if set forth fully herein.

59. That, on information and belief and at all times relevant, by their conduct the Defendants intentionally and without regard for Plaintiffs' emotional, physical or mental well being intentionally threatened Plaintiffs and compelled them to sign the coercive contracts as aforesaid.

60. That as a direct and proximate result of Defendants intentional conduct they inflicted great and recurrent psychological, mental and emotional fear, anguish, strain, sleeplessness, stress, pain, humiliation, distress, suffering and damage upon Plaintiffs.

WHEREFORE, Plaintiffs demands judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT XIII
### (Negligent Inflictions of Emotional Distress)

1-60. Plaintiffs incorporate by reference paragraphs 1 though 60 of Count XII as paragraphs 1 though 60 of this Count XIII as if set forth fully herein.

61. That, on information and belief and at all times relevant, by their conduct the Defendants negligently and without regard for Plaintiffs' emotional, physical or mental well being intentionally coercing, threatening and intimidating

34

Plaintiffs and compelled them to sign said coercive contracts as aforesaid and pay them as above stated.

61. That as a direct and proximate result of Defendants intentional conduct they inflicted great and recurrent psychological, mental and emotional fear, anguish, strain, sleeplessness, stress, pain, humiliation, distress, suffering and damage upon Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

### COUNT XIV
#### (Common Law Conspiracy)

1-60. Plaintiffs reallege paragraph 1 through 45 of Count XII as paragraphs 1 through 60 of this Count XIV as if set forth fully herein.

61. That, on information and belief and at all times relevant, the conspiracy hereinabove alleged also constituted a conspiracy by the Defendants to abuse and misuse their public offices and badges of authority to unlawfully trespass upon Plaintiffs' property, threaten, intimidate them and illegally to illegally procure their signatures to unlawful documents and extort and convert his funds to and for their and each other's use and benefit, inflict upon them emotional and mental distress, fear, and pain, cause them great and recurrent psychological, mental and emotional fear, anguish, strain, sleeplessness, stress, pain, humiliation, distress, suffering and damage and a loss of liberty, travel, freedom of speech, association, commerce, free trade and other losses as hereinabove described and as aforesaid.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

COUNT XV
(Violations of Illinois Constitution)

1-61. Plaintiffs reallege paragraph 1 through 61 of Count XIV as paragraphs 1 through 61 of this Count XV as if set forth fully herein.

62. The at all times relevant, the Illinois Constitution of 1970 provided, *inter alia*, free speech, association, assembly, privacy, travel, contract, due process, search, concomitant with those of the United States Constitution.

63. That further, Article VIII, Section 1(a) of the Illinois Constitution provided that "[p]ublic funds, property or credit shall be used only for public purposes."

64. Defendants conduct, acts, policies, customs, practices as allege above were also violative under the aforementioned Illinois Constitution provisions and thereby intending to deprive and depriving Plaintiffs of their rights, privileges and immunities aforesaid, as are also secured, protected and guaranteed by the laws, statutes and Constitution of the Illinois and use public, Sheriff's Office resources, assets and property for their private income producing purposes.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit,

36

reasonable attorneys fees and such other and further relief as
may be proper in the premises.

### Count XVI
(Invasion of Privacy)

1-64. Plaintiffs realleges paragraph 1 through 64 of Count
XV as paragraphs 1 through 64 of this Count XVI as if set forth
fully herein.

65. That on information and belief, by their conduct and
actions aforesaid, Defendants, under the supervision of Nygren,
invaded Plaintiffs' seclusion and privacy, right to be left alone
and remain free from Defendants' invasion, intrusion and unlawful
abuse and misuse governmental power and authority, all to their
great damage.

WHEREFORE, Plaintiffs demand judgment against the
Defendants, and each of them, individually, jointly and
severally, and that they be awarded general, compensatory and
punitive damages in a sum in great excess of Seventy Five
Thousand ($75,000.00) dollars, plus the costs of this suit,
reasonable attorneys fees and such other and further relief as
may be proper in the premises.

### Count XVII
(Intentional Interference with Contracts)

1-65. Plaintiffs realleges paragraph 1 through 65 of Count
XVI as paragraphs 1 through 65 of this Count XVII as if set
forth fully herein.

66. That all times relevant Defendants, knew or should
have known that Plaintiffs had a contractual relations with
other security personnel to provide private services for his
various events.

67. That on information and belief Defendants, by their
wrongful conduct and conspiracy stated above, intentionally
interfered with said contracts in such a way as to wrongfully
interfere with and deny Plaintiffs their rights to contract with

and perform thereby interfering with and depriving them benefits to which they were otherwise entitled thereunder.

68. That as a result of said wrongful and intentional interference with said contracts, the value of Plaintiffs' contractual rights, benefits and opportunities were damaged in such amount as the proofs will show and trier of fact may find.

WHEREFORE, Plaintiffs demands judgment against the Defendants and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT XVIII
### (Interferences with Prospective Economic Advantages)

1-67. Plaintiffs reallege paragraph 1 through 67 of Count XVII as paragraphs 1 through 67 of this Count XVIII as if set forth fully herein.

68. That, on information and belief and at all times relevant, by their conduct the Defendants interfered with the prospective economic advantages Plaintiffs enjoyed with event attendees and private security guards and their services displaced by Defendants' aforementioned unlawful conduct.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT XIX
### (Abuse of Public Office – Official Misconduct)

1-68. Plaintiffs reallege paragraph 1 through 68 of Count XVIII as paragraphs 1 through 68 of this Count XIX as if set forth fully herein.

69. That at all times relevant, under Illinois law, Defendants were public officers of the State of Illinois.

70. That under Illinois law, 720 ILCS 5/33-3, public officers or employees commit the offense of official misconduct when, in his official capacity, he or she solicits or knowingly accepts for the performance of any act a fee or reward which he or she knows is not authorized by law.

71. That under Illinois law no public officer or employee of may corruptly use or attempt to use his official position or any property or resource which may be within his trust, or perform his official duties, to secure a special privilege, benefit, or exemption for his or herself, or others.

72. That under Illinois law no public officer or employee who is involved in making or administering a contract on behalf of a public agency may derive a benefit from a public contract except as provided in this section, or as otherwise allowed by law.

73. That under Illinois law, 50 ILCS 105/3; 720 ILCS 5/33-1, 33-1, public officers are prohibited from using his or her official powers for personal gain or benefit.

74. That under Illinois law, 720 ILCS 5/33-3, it is official misconduct for a public officer or employee to knowingly exceed their authority.

75. That under Illinois law, Ill. Rev. Stat. 1981, ch. 38, §§12-6, 33-3, 33A-2, 33A, it is official misconduct and a Class X Felony to intimidate a citizen while armed with a dangerous weapon.

76. That under Illinois law, 720 ILCS 5/1211 said armed "of-duty" deputies, not acting "in the line of duty", committed

a criminal home invasion by entered Stanard's residence as aforesaid.

77. 720 ILCS 5/19-4 it is a criminal trespass to residence to, as here, without authority, enter or remain within any residence.

78. That as alleged above, Defendants, in their official capacities engaged in and committed official misconduct and corruptly solicited and/or knowingly accepted for the performance security services, fees and/or rewards that knew or should have known were beyond their lawful public compensation and/or salaries and were not authorized by law but to accomplish an unlawful purpose and reward their exercise of office beyond that permitted by law and constituted intimidation and official misconduct, said Defendants having been armed with a dangerous weapons, firearms, during the course of said intimidation while using their official powers for personal gain and/or benefit.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT XX
### (Fraud)

1-78. Plaintiffs reallege paragraph 1 through 78 of Count XIX as paragraphs 1 through 78 of this Count XX as if set forth fully herein.

79. That at all times relevant, Defendants owed Plaintiffs, the County of McHenry, the people of the State of Illinois and others a fiduciary, good faith duties of fidelity, loyalty and honest services.

80. That as hereinabove alleged, Defendants engaged in a scheme to defraud, deprive and cheat Plaintiffs, the County of McHenry, the People of the State of Illinois and others of their rights to freedom of contract, fidelity, loyalty and honest services and the benefit of services of public officials and employees by doing said acts knowingly with the intent to deceive or cheat them in order to cause a gain of money to the Defendants or others, and cause a loss of money or property to and deprive the Plaintiffs, the County of McHenry, the People of the State of Illinois and others of their rights to freedom of contract, fidelity, loyalty and honest services and the protection of said rights by their public officials and employees.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, individually, jointly and severally, and that they be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT XXI
### (Application for Writ of *Quo Warranto*)

1-80. Plaintiffs reallege paragraph 1 through 80 of Count XX as paragraphs 1 through 80 of this Count XXI as if set forth fully herein.

81. That as alleged above, Defendants have wrongfully usurped and exercised powers *ultra vires* those authorized by law.

82. That Plaintiffs have an interest in the question and believes any request of the Illinois Attorney General or the McHenry County State's Attorney to bring a *quo warranto* proceeding at his request would be futile and therefore bring this action *ex rel* the People of the State of Illinois.

WHEREFORE, Plaintiffs pray that a lawful writ in the nature of *Quo Warranto* issue to Defendants to demonstrate by what lawful authorities, if any, each claims to exercise the powers exercise of the right without lawful authority charge of usurpation complain to be exercised without lawful authority and usurped of in the instant case, and that they be awarded reasonable attorney's fees, costs, and expenses and such other and further relief as may be just and proper in the premises.

## COUNT XXII
### (Injunctive Relief)

1-82. Plaintiffs realleges paragraphs 1 though 82 of Count XXI as paragraphs 1 though 82 of this Count XXII as if set forth fully herein.

83. That as shown above, class representatives have clearly ascertainable rights that need protection; they will suffer irreparable harm by again being subjected to Nygren's coercive terms without protection of the injunction; they have no adequate remedy at law; and they have a substantial likelihood of success on the merits; and the potential harm they will suffer if injunctive relief does not issue outweighs any possible harm to Defendants might bear if injunctive relief were not issued.

84. That pursuant reason of the foregoing Plaintiffs has no adequate remedy at law and is, by reason of the foregoing, entitled to temporary, preliminary and permanent injunctive relief, reasonable attorney's fees, costs, and expenses.

WHEREFORE, Plaintiffs pray that a judgment be entered awarding them equitable relief against each Defendants, jointly and severally, including but not limited to temporary restraining order pursuant to F. Rule Civ. P 65 (b), preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from threatening to, retaliating against Plaintiffs by any means in any way or in any

other way by any other means placing any restraint on their liberty or for engaging in for any other associated or similar peaceable conduct as herein described, and award them reasonable attorney's fees, costs, and expenses and for such other and further relief as may be just and proper in the premises.

## COUNT XXIII
### (Declaratory Relief)

1-84. Plaintiffs reallege paragraphs 1 though 84 of Count XXII as paragraphs 1 though 84 of this Count XXIII as if set forth fully herein.

85. That by reason of the foregoing an actual controversy exists between the parties and Plaintiffs are entitled to a judicial declaration of his rights pursuant to 735 ILCS 5/2-701.

WHEREFORE, Plaintiffs pray that a declaratory judgment be entered against the Defendants and in their favor pursuant to 735 ILCS 5/2-701 declaring that the document(s) that they signed void and of no force and effect, that and that this Court declare Nygren has no lawful power or authority to impose or change Plaintiffs anything or enter upon their property and that the Defendants actions were unlawful, the rights of the parties, and award them their reasonable attorneys fees, costs, and all further relief to which the they may be entitled and which this Court may deem proper and just in the premises.

## COUNT XXIV
### (Recession)

1-85. Plaintiffs realleges paragraphs 1 though 85 of Count XXIII as paragraph 1 though 85 of this Count XXIV as if set forth fully herein.

86. That by reason of the foregoing said coercive contracts were unlawful, against public policy, gained through and as the result of unlawful threat and coercion, under duress and undue influence, and therefore Plaintiffs are equitably entitled to rescind any and all purported agreements, contracts,

consents, assignments, understanding or documents which Defendants obtained as hereinabove mentioned.

WHEREFORE, Plaintiffs pray that a judgment of rescission of the above-mentioned document be entered against Defendants jointly and severally, directing that that any and said coercive contracts and records signed by or on behalf of Plaintiffs be produced, declared void *ab initio* and rescinded, removed from all public files and records, that all monies paid be disgorged and refunded to them with prejudgment interest there on pursuant to 735 ILCS 5/2-1303, plus they be awarded reasonable attorney's fees, costs, and expenses and for such other and further relief as may be just and proper in the premises.

<u>COUNT XXV</u>
(Illinois Consumer Fraud and
Deceptive Business Practice Act Claim)

1-86. Plaintiffs realleges paragraphs 1 though 86 of Count XXIV as paragraph 1 though 86 of this Count XXV as if set forth fully herein.

87. That Defendant's actions as alleged above constitute unfair competition and deceptive trade practices under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

88. That under the Illinois Consumer Fraud and Deceptive Business Practice Act (hereinafter referred to as "ICFA"), 815 ILCS 505/2, a person or corporation can be held liable for "unfair ... practices" used "in the conduct of any trade or commerce." According to the statute, "[t]he terms 'trade' and 'commerce' mean... offering for sale, sale, or distribution of any services...." 815 ILCS 505/1(f).

89. That Defendants conduct and actions as alleged above constituted and unfair practice in connection with the distribution of security services harmful to competition.

WHEREFORE, Plaintiffs pray for judgment as follows:

A.  Declaring that the unfair practice in connection with the distribution of security services, conspiracy, combination, contracts, arrangements and agreements alleged herein be adjudged and decreed to be in violation of ICFA;

B.  Awarding Plaintiffs and against Defendants, jointly and severally, general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars;

C.  Awarding Plaintiffs equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from hereafter ever engaging in such unfair practices in connection with the distribution of security services or requiring or intimidating them to enter into or perform such type or kind of coerced contract or threatening to, retaliate, interfere, demand, intimidate them in any way or requiring any payment, indemnification, to be held harmless or to command or require any other type or kind of benefit or right, or closing down roads or otherwise blocking or interfering with access to their property, in connection with any and all lawful events or concerts conducted on their property or otherwise, interfering with them or others coming onto and going to, from, on or about their property, or in any other way placing any restraint on their liberty or property or engaging in for any other associated or similar peaceable assembly, speech or activity as herein described or employment of private security persons in connection therewith, that a declaratory judgment be entered against the Defendants and in their favor declaring that the coerced contracts that they signed be declared illegal, against public policy, void *ab initio* and of no force and effect, that

45

they be ordered expunged and removed from the Sheriff's and other related government records and files, that this Court declare the rights of the that a judgment of rescission of the above-mentioned coerced contracts be entered against Defendants jointly and severally, that all payments heretofore made by the pursuant to said coerced contracts and illegal conduct be accounted for, disgorged and refunded to Plaintiffs with prejudgment interest there on pursuant to 735 ILCS 5/2-1303;

D.    Awarding Plaintiffs civil penalties pursuant to ICFA;

E.    Awarding Plaintiffs costs, disbursements and reasonable attorneys fees pursuant to ICFA; and

G.    Awarded Plaintiffs such other and further relief, as may be appropriate, necessary, just and proper in the premises.

## COUNT XXVI
### (Illinois Antitrust Act Claim)

1-89.  Plaintiffs reallege paragraphs 1 though 89 of Count XXV as paragraph 1 though 66 of this Count XXVI as if set forth fully herein.

90.  That as alleged above Plaintiffs were illegally compelled to pay Defendants prices for security services that were artificially inflated by the conspiracy, combination, arrangement and illegal agreements and contracts, anticompetitive practices, including price fixing and self-allocations of market for security services, and an unreasonable restraints of trade, which included exclusive dealing arrangements the establishment or use of coercive monopoly power to exclude and stifle competition and fix anticompetitive artificially high prices all in restraint of trade, to suppress and destroy competition and freedom of contract in violation of (Illinois Antitrust Act (740 ILCS 10/1 et. seq.) (hereinafter referred to as "The Illinois

Antitrust Act"), in an amount presently undetermined but may be determined through discovery.

WHEREFORE, Plaintiffs pray for judgment as follows:

A. Declaring that the conspiracy, combination, contracts, arrangements and agreements alleged herein be adjudged and decreed to be in violation of section 3(1) of the Illinois Antitrust Act, 740 ILCS 10/3(1), and to be an unreasonable restraint of trade in violation of section 3(2) of the Illinois Antitrust Act, 740 ILCS 10/3(2);

B. Awarding Plaintiffs and against Defendants, jointly and severally, general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars;

C. Awarding Plaintiffs equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from hereafter ever requiring or intimidating them to enter into or perform such type or kind of coerced contract or threatening to, retaliate, interfere, demand, intimidate them in any way or requiring any payment, indemnification, to be held harmless or to command or require any other type or kind of benefit or right, or closing down roads or otherwise blocking or interfering with access to their property, in connection with any and all lawful events or concerts conducted on their property or otherwise, interfering with them or others coming onto and going to, from, on or about their property, or in any other way placing any restraint on their liberty or property or engaging in for any other associated or similar peaceable assembly, speech or activity as herein described or employment of private security persons in connection therewith, that a declaratory judgment be entered against the Defendants and in

their favor declaring that the coerced contracts that they signed be declared illegal, against public policy, void *ab initio* and of no force and effect, that they be ordered expunged and removed from the Sheriff's and other related government records and files, that this Court declare the rights of the that a judgment of rescission of the above-mentioned coerced contracts be entered against Defendants jointly and severally, that all payments heretofore made by the pursuant to said coerced contracts and illegal conduct be accounted for, disgorged and refunded to Plaintiffs with prejudgment interest there on pursuant to Illinois law, 735 ILCS 5/2-1303;

D.  Awarding Plaintiffs treble damages pursuant to 740 ILCS 10/7(2);

E.  Awarding Plaintiffs civil penalties pursuant to 740 ILCS 10/7(4);

F.  Awarding Plaintiffs costs, disbursements and reasonable attorneys fees pursuant to 740 ILCS 10/7; and

G.  Awarded Plaintiffs such other and further relief, as may be appropriate, necessary, just and proper in the premises.

## COUNT XXVII
### (Illinois Class Action)

1-90. Plaintiffs realleges paragraphs 1 through 90 of Count XXVI as paragraph 1 though 90 of this Count XXVII as if set forth fully herein.

91.  That on information and belief, the natural citizens of and corporations and other entities doing business in McHenry County, State of Illinois have paid prices for security services that were artificially inflated by the conspiracy, combination, arrangement and illegal agreements and contracts, anticompetitive practices, including price fixing and self-allocations of market for security services, and an unreasonable restraints of trade, which ay includes exclusive dealing arrangements the establishment or use of coercive

monopoly power to exclude and stifle competition and fix prices all in restraint of trade, to suppress and destroy competition and freedom of contract in violation of the Illinois Antitrust Act, in an amount presently undetermined but may be determined through discovery.

92. The class on whose behalf this action is brought on behalf of Plaintiffs and all natural citizens and corporations and other entities doing business in McHenry County, State of Illinois that have been required to accept and pay for security services provided by the Defendants, or their co-conspirators, during the period June 24, 2002 and thereafter.

93. That Plaintiffs, as class representatives, will adequately represent the claims of each of these natural citizens and corporations of McHenry Illinois pursuant to Illinois law, 735 ILCS 5/2-801, et. seq.

94. That a class action may be maintained in this action because:

(a) The class is so numerous that joinder of all members is impractical. While the exact number and identities of the class members are unknown at this time, Stanard believes the number to be substantial and that they can be determine through discovery.

(b) There are questions of fact or law, including but not limited to the above issues of conspiracy, etc. that are common to the class. Such questions predominate over any questions affecting only individual class members.

(c) Stanard is best situated to, and will, fairly and adequately represent the interest of the class and other members, who like them, have been intimidated, may, like them, be fearful to step forward to vindicate and protect their rights.

(d)  The class action is an appropriate method for the fair and efficient adjudication of the controversy.

WHEREFORE, Plaintiffs, as class representatives, prays for judgment as follows:

A.  Declaring that the conspiracy, combination, contracts, arrangements and agreements alleged herein be adjudged and decreed to be in violation of section 3(1) of the Illinois Antitrust Act, 740 ILCS 10/3(1), and to be an unreasonable restraint of trade in violation of section 3(2) of the Illinois Antitrust Act, 740 ILCS 10/3(2);

B.  Awarding the class and against Defendants, jointly and severally, general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars;

C.  Awarding the class equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from hereafter ever requiring or intimidating them to enter into or perform such type or kind of coerced contract or threatening to, retaliate, interfere, demand, intimidate them in any way or requiring any payment, indemnification, to be held harmless or to command or require any other type or kind of benefit or right, or closing down roads or otherwise blocking or interfering with access to their property, in connection with any and all lawful events or concerts conducted on their property or otherwise, interfering with them or others coming onto and going to, from, on or about their property, or in any other way placing any restraint on their liberty or property or engaging in for any other associated or similar peaceable assembly, speech or activity as herein described or employment of private security persons in connection therewith, that a declaratory judgment be entered against the Defendants and in

their favor declaring that the coerced contracts that they signed be declared illegal, against public policy, void *ab initio* and of no force and effect, that they be ordered expunged and removed from the Sheriff's and other related government records and files, that this Court declare the rights of the that a judgment of rescission of the above-mentioned coerced contracts be entered against Defendants jointly and severally, that all payments heretofore made by the pursuant to said coerced contracts and illegal conduct be accounted for, disgorged and refunded to the class with prejudgment interest there on pursuant to 735 ILCS 5/2-1303;

D.    Awarding the class treble damages pursuant to 740 ILCS 10/7(2);

E.    Awarding the class civil and equitable appropriate remedies including an equitable accounting pursuant to 740 ILCS 10/7(4);

F.    Awarding the class representatives and class costs, disbursements and reasonable attorneys fees pursuant to 740 ILCS 10/7; and

G.    Awarded the class such other and further relief, as may be appropriate, necessary, just and proper in the premises.

<u>COUNT XXVIII</u>
("Carver Doctrine" Claim)

1-94.    Plaintiffs reallege paragraphs 1 through 94 of Count XXVII as paragraph 1 though 94 of this Count XXVIII as if set forth fully herein.

95.    That Plaintiffs hereby incorporate and gives notice of the pendency of this cause and the forgoing Counts and claims against the McHenry County Sheriff Defendants to McHenry County under Illinois law, pursuant to 745 ILCS 10/9-102, 55 ILCS 5/4-6003, and 55 ILCS 5/5-1106, and in accord with <u>Carver v. Sheriff of LaSalle County, Illinois</u>, 324 F.3d 947, 948 (7th Cir. 2003), the County of McHenry is hereby named as indispensable party by

reason of its statutory obligation thereunder to pay any potential judgment(s) entered herein against the McHenry Sheriff and his deputies named as Defendants herein.

WHEREFORE, Plaintiffs pray that this Court enter a judgment against the County of McHenry, finding and declaring it responsible for and ordering to pay and all damages, attorney's fees, costs and judgments as Plaintiffs may recover herein against the McHenry County Sheriff and his deputies, and such other and further relief as may be proper in the premises.

> H. Michael Stanard individually and d/b/a One Zero Charlie Productions and Galt Festivals, Joeleen Stanard, individually and as C.E.O. of One Zero Charlie Productions, Inc., and One Zero Charlie Productions, Inc., an Illinois Corporation, Plaintiffs,

By _____
Walter P. Maksym, their attorney

ATTORNEY'S RULE 11 CERTIFICATION

The undersigned attorney certifies that he has read the foregoing complaint, that to the best of his knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact the same is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

_____
Walter P. Maksym, Plaintiffs' Attorney

Walter P. Maksym
Attorney at Law
2056 North Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (773) 929-2923

## VERIFICATION BY CERTIFICATION

The undersigned certifies that he has read the
foregoing instrument by him subscribed, that to the best of
his knowledge, information, and belief, formed after
reasonable inquiry, it is true in substance and well
grounded in fact, that any exhibits that may be attached
thereto or referenced therein are true and correct copies
of the original they purport to be, and that it is not
interposed for any improper purpose, such as to harass or
to cause unnecessary delay or needless increase the costs
of litigation.

_____
H. Michael Stanard

Walter P. Maksym
Attorney at Law
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: 773-929-2923



# MCHENRY COUNTY
## SHERIFF'S OFFICE
2200 N. SEMINARY AVE.
WOODSTOCK, IL 60098

**KEITH NYGREN**
SHERIFF

**EUGENE E. LOWERY**
UNDERSHERIFF

NON-EMERGENCY
815/338-2144

EMERGENCY
911

# INDEPENDENT OFF-DUTY DETAIL AGREEMENT

This agreement is made by and between the McHenry County Sheriff, of 2200 N. Seminary Ave., Woodstock, Illinois, hereinafter known as the Sheriff, and **One Zero Charlie Productions**, of **Greenwood, IL**, hereinafter known as the Contractor on this **27th** day of **July, 2005**. The intent of this agreement is for the Sheriff to provide Off-Duty Sheriff's Deputies to render the service described in this agreement to the Contractor;

<u>**Service Rendered**</u>: The Sheriff shall provide the following services:

**6** Off-Duty Deputy/Deputies for the following detail:

**Six deputies to provide traffic control and limited supplement to the privately contracted security hired by One Zero Charlie Productions.**

<u>**Term of Service**</u>; The service agreed upon will be provided on:

**July 29th & 30th**, 2005 at 6:00pm and shall terminate on **July 29th & 30th**, 2005 at 12:00am.

Total hours of service to be provided under this agreement are **72 hours**, plus travel time as per paragraph below.

<u>**Fee**</u>; In consideration of the services rendered under the terms of this agreement, the Contractor shall compensate the Deputy/Deputies at the rate of $40.00 per man hour. Compensation for travel time will be at a rate of $40.00 per man hour. All fees will be paid to the individual Deputy/Deputies working the detail. Any financial responsibilities regarding earned income taxing shall be the sole responsibility of the individual Deputy. This does not prevent the Contractor from assuming this responsibility at their option.

**Termination;** This agreement may be terminated by either party upon two days written notice. Failure of the Contractor to notify the Sheriff 24 hours prior to the cancellation of an event or activity will subject the Contractor to a two (2) hour minimum service charge per Officer.

**Event Promotion;** The Contractor will in no way and under no circumstance promote, advertise, or make contingent the event or activity upon the Sheriff providing the service rendered. Further, the Contractor is prohibited from informing the public, in any manner and by any means, that security at an event or activity will be provided by the Sheriff. Violation of this provision will result in a material breach of this agreement and upon written notification by the Sheriff this will immediately be terminated.

**Liability;** The Sheriff, his agents, or employees will not be held liable for the failure of the Sheriff to provide Off-Duty Deputies at the date and time of the event or activities described in Services Rendered and the Contractor will hold harmless, indemnify and defend the Sheriff, his agents, and employees from any action brought by any third party against the Sheriff, his agents, and employees for the failure to perform the Service Rendered. It is further understood by the parties that Off-Duty Deputies will be provided on the basis of their availability.

The Sheriff, his agents, or employees assume no responsibility to provide On-Duty Deputies to staff an Off-Duty detail, during periods where no Off-Duty Deputies are available.

**Indemnification;** Contractor shall indemnify, hold harmless and defend the County of McHenry, its officers and employees against any and all liability, loss, costs, damages, expenses, claim or actions, including attorney's fees which the McHenry County Sheriff, County of McHenry, its officers or employees may hereafter sustain, incur, or be required to pay, arising wholly or in part due to any act or omission of the Contractor, its agents, servants or employees without limitation, in the providing of services as set forth in the Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the dates written below.

COUNTY OF McHENRY

By: _____
    Keith Nygren, Sheriff or his Designee

CONTRACTOR

By: _____
    MICHAEL STANARD.

Dated: _July 27, 2005_     Dated: _July 27, 2005_

Confidential

Page 2

Aug. 1. 2005  9:59AM                              No. 0547   P.  1



## McHENRY COUNTY
## SHERIFF'S OFFICE
2200 N. SEMINARY AVE.
WOODSTOCK, IL 60098
McHENRY CO, IL

**KEITH NYGREN**
SHERIFF

**EUGENE E. LOWERY**
UNDERSHERIFF

NON-EMERGENCY
815/338-2144

EMERGENCY
911

# FAX COVER LETTER

Date:  _8-1-05_

Please deliver the following pages to:

Name of Recipient  _Michael Stanard_

Recipient's FAX:  _815-648-4482_

From:  _Cathy Hardt_

Regarding:  _1 hr. payment_

Total number of pages including this page:  _1_

Message: _2-officers stayed 1-Hour longer._
_Deputy Timothy Matteson_
_Deputy Paul Hildreth_
_Check can be mailed to: MCSO - 2200 N. SEMINARY AVE._
_WOODSTOCK, IL 60098_

If you do not receive all the pages indicated above, please contact the sending party as
soon as possible at 815/338-2144.

Our FAX number is 815/334-4669.

_Paid_

Thank you,
Cathy—Special Services